**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Theresa Sheridan, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>Pima County, et al.,<br><br>    Defendants. | No. CV-16-00588-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment (Doc. 62) filed by Defendants Barbara LaWall and Pima County (collectively, "Defendants"). Plaintiff Theresa Sheridan ("Sheridan") has filed a Response (Doc. 66) and Defendants have filed a Reply (Doc. 69). Oral argument has been requested. However, the issues are fully presented in the briefs and the Court finds it would not be assisted by oral argument. The Court declines to schedule this matter for oral argument. LRCiv 7.2(f).

I.  *Factual and Procedural Background*

On August 6, 2007, Sheridan was hired to work as a deputy county attorney at the Pima County Attorney's Office ("PCAO") on behalf of Pima County Attorney Barbara LaWall ("LaWall"), Pima County, and the State of Arizona. During all times relevant to this litigation, LaWall was acting in her official capacity as an employer within the meaning of 42 U.S.C. § 2000e(a).

The hiring process required Sheridan undergo an in-person interview with other

PCAO personnel while completing presentations before an assessment committee. Sheridan testified during her deposition that she went through six different levels of interview/presentations and that LaWall hired her.

During Sheridan's time as a deputy county attorney, she prosecuted hundreds of misdemeanor and felony crimes. She was reassigned between misdemeanors and felonies during her tenure at the PCAO. Sheridan asserts she was the top-performing prosecutor in her unit in jury trial convictions at the time of her dismissal.

During Sheridan's time at the PCAO, she was assigned as the prosecutor in *State v. Marisela Gray* ("Gray"), CR20131845 ("*Gray* case") – a felony driving under the influence of prescription drugs case. Defense counsel for Gray alleged – through an April 2014 motion filing – that Sheridan had obtained an unredacted prescription medication list for Gray in February 2014. Specifically, it was claimed Sheridan looked through documents in the work area of the Judicial Assistant for Arizona Superior Court Judge Teresa Godoy ("Judge Godoy") and removed a non-redacted copy of Gray's prescription records. This removal was despite the law clerk/bailiff stating she was not comfortable with Sheridan taking the documents; however, Sheridan indicated she did not hear the comment of the law clerk/bailiff. (Agreement for Discipline by Consent, Doc. 63-1, Ex. 15). Shortly after the filing of the April 2014 motion, Sheridan wrote a response to defendant's motion arguing no prosecutorial misconduct had occurred. Further, on May 29, 2014 a week before the scheduled jury trial, Arizona Superior Court Judge Teresa Godoy ("Judge Godoy") held a hearing in the *Gray* case regarding the allegations surrounding Sheridan.

At the hearing, Judge Godoy recognized that, based on the state's response to the prosecutorial misconduct motion, Sheridan would be required to be a witness; Judge Godoy ordered that another prosecutor be present to represent the state at the hearing. Further, at the end of the hearing, the judge found Sheridan had committed intentional prosecutorial misconduct and dismissed the *Gray* case with prejudice. Specifically, that court stated:

THE COURT FINDS as follows:

1. Ms. Sheridan being told to return on Monday by this Court's Law Clerk, as the item was not in the box and she ignored the request to return on Monday.

2. Ms. Sheridan came into chambers and went to this Court's Judicial Administrative Assistance [sic] desk and removed an item. This Court's law clerk informed Ms. Sheridan that she was uncomfortable with her removing the item, but Ms. Sheridan ignored that statement and removed the item anyway. The item removed by Ms. Sheridan were [sic] privileged medical records that were un-redacted.

3. The envelope had to be opened and looked at as there is no other way that Ms. Sheridan could have seen the contents as the documents were sealed.

4. Ms. Sheridan never notified defense counsel of what occurred.

5. Ms. Sheridan also sent communications to chambers; this Court's Judicial Administrative Assistant, about the incident and did not copy defense counsel.

6. Avowing to the Court six separate times that she never looked at the documents.

THE COURT FINDS that [] all of these actions were done intentionally on behalf of Ms. Sheridan and she made conscious decisions about what she did each step of the way and did so with indifference of the prejudice to the defendant.

\* \* \* \* \* \*

(Def. Statement of Facts, Doc. 63-1, Ex. 12).

That same day, Sheridan met with her supervisor Ryan Schmidt, LaWall and Amelia Cramer ("Cramer"), PCAO's chief deputy county attorney. Sheridan was placed on administrative leave with pay[1] by LaWall via a hand delivered letter from human resources signed by Cramer citing an ongoing investigation into her conduct. After the

---

[1] Pima County Personnel Policy 8-107 allows for administrative leave of up to 30 days with pay – without County Administrator approval – when it is determined to be in the best interests of the County.

hearing and Sheridan's placement on administrative leave, the PCAO elected not to appeal Judge Godoy's ruling or dismissal in the *Gray* case even though it had the right to do so within 20 days.

Within days after Sheridan was placed on administrative leave, Judge Godoy filed a complaint on June 19, 2014 with the State Bar of Arizona, alleging lack of candor to the tribunal, against Sheridan.

On June 27, 2014, a PCAO detective delivered a notice of dismissal signed by LaWall to Sheridan at her residence.[2] The notice terminated Sheridan's employment of almost seven years as a prosecutor with Pima County and the PCAO. Dishonesty and incompetence regarding the unredacted records in the *Gray* case were alleged as the reasons for Sheridan's dismissal.[3]

At the time of Sheridan's dismissal, there were no pending or prior discipline proceedings regarding her license to practice law.

Upon the recommendation of Judge Godoy, the State Bar of Arizona conducted an investigation into Sheridan's actions in the *Gray* case. In December 2014 – six months after Sheridan's termination from employment with the PCAO – Sheridan and the State Bar of Arizona agreed Sheridan would be subject to the sanction of reprimand and the payment of costs; Sheridan conditionally admitted violations of AZ.Sup.Ct.R. 42, ER 3.4(c) & 4.4(a) Arizona ethical rules. These provisions address the knowing failure to obey an obligation under the rules of a court and using methods of obtaining evidence that violate the legal rights of another person. The Final Judgment and Order issued by the Presiding Disciplinary Judge, which accepted the parties' proposed agreement, was filed on December 4, 2014; Sheridan was reprimanded for her conduct in violation of the

---

[2]The Notice of Intent to Dismiss is dated June 11, 2014. However, Sheridan's Response states the date of delivery of the notice as June 27, 2014.

[3]Sheridan appealed LaWall's dismissal decision to the Pima County Merit Commission. The Commission upheld (3-0) Sheridan's dismissal. Further, the Arizona Superior Court and Arizona Court of Appeals upheld the Merit Commission's decision. Finally, the Arizona Supreme Court denied review.

- 4 -

Arizona Rules of Professional Conduct. This reprimand did not include charges of dishonesty or lack of candor as part of the settlement.

On April 21, 2015, Sheridan filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"). On June 7, 2016, the EEOC, unable to conclude the allegations established a violation of the statutes or if the PCAO had complied with the statutes, issued Sheridan a Notice of Right to Sue.

The original Complaint naming LaWall, the PCAO, and Pima County as Defendants was filed on September 2, 2016. An Amended Complaint alleging sex discrimination and naming LaWall and Pima County was filed on May 21, 2017.

V.   *Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Scheuring v. Traylor Bros.*, 476 F.3d 781, 784 (9th Cir. 2007).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Celotex Corp.*, 477 U.S. at 248 (internal quotes omitted); *see also United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) ("a plaintiff cannot rely on mere allegations but rather must "set forth" by affidavit or other evidence "specific facts"). The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-23. "[A] party cannot

manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The dispute over material facts must be genuine. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial. *Id.* "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) (citation omitted). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his or her favor. *Id.* at 255. Further, in seeking to establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in his favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (citation omitted).

The Court is only to consider admissible evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits). Moreover, "[a]t the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form. [They] instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

VI. *Title VII: Gender Discrimination*

Defendants move for summary judgment on the Title VII Gender Discrimination claim. Sheridan asserts she was discriminated against because of her gender – being terminated by LaWall after being put on paid leave – compared to the disparate treatment

- 6 -

of two similarly situated males: Kenneth Peasley ("Peasley") and Thomas Zawada ("Zawada"), two male PCAO deputy county attorneys.

The Arizona Supreme Court Disciplinary Commission recommended Peasley's disbarment on December 16, 2002. In response to the Commission's recommendation, LaWall placed Peasley on administrative leave with pay on December 17, 2002, and later that day Peasley announced his retirement from the PCAO. On May 28, 2004, the Arizona Supreme Court disbarred Mr. Peasley. *In re Peasley*, 208 Ariz. 27 (2004).

In *Pool v. Superior Court In and for Pima County*, 139 Ariz. 98 (1984), the Court determined Zawada engaged in intentional prosecutorial misconduct. Further, in *State v. Hughes*, 193 Ariz. 72 (1993), the Court again found Zawada engaged in cumulative prosecutorial misconduct – the Court found this misconduct deprived defendant of a fair trial. On July 1, 2004, the Arizona Supreme Court suspended Zawada for six months and one day due to his actions in *State v. Hughes*. *In re Zawada*, 208 Ariz. 232 (2004). On July 6, 2004, Zawada was placed on administrative leave by LaWall pursuant to the Arizona Supreme Court's decision, and on July 14, 2004, Zawada resigned and retired from the PCAO.

The parties dispute if the employment of either Peasley or Zawada would have been terminated by LaWall had they not resigned and/or retired from PCAO. LaWall testified during her deposition that their employments would have been terminated, but Sheridan asserts this is pure speculation.

The Supreme Court has adopted a burden-shifting analysis to address the "difficulties of proving intent to discriminate in a disparate treatment context." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 854 (9th Cir. 2002) (en banc) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This formula must be adapted to the facts of each case. *See Hagans v. Andrus*, 651 F.2d 622, 624-625 (9th Cir. 1981). The first step of the *McDonnell Douglas* framework considers whether a plaintiff can establish a prima facie case of discrimination. *Pinder v. Employment Dev. Dep't*, 227 F. Supp. 3d 1123, 1137 (E.D. Cal. 2017). In determining whether a prima facie case has been

established, the overriding inquiry is whether the evidence is sufficient to support an inference of discrimination. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

To establish a prima facie case, a plaintiff "must offer evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (alteration in original), citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Sheridan may establish a prima facie case based on circumstantial evidence by showing: (1) that she is a member of a protected class; (2) that she is qualified for her position and is performing her jobs satisfactorily; (3) that she experienced an adverse employment action; and (4) that "similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1361 (9th Cir. 1985) (holding that a plaintiff may show "an inference of discrimination in whatever manner is appropriate in the particular circumstances."). *See also Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Once a plaintiff has shown a prima facie case of discrimination under the *McDonnell Douglas* test, the burden then shifts to the employer ""to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct." *Vasquez*, 349 F.3d at 640. If the employer articulates "such a reason, the burden shifts back to the [employee] to show that the employer's [stated] reason is a pretext for discrimination." *Vasquez*, 349 F.3d at 640. Further, on a summary judgment motion relating to pretext, an employee must "raise a genuine factual question whether, viewing the evidence in the light most favorable to [the employee], [the employer's] reasons are pretextual." *Chuang v. Univ. of Cal. Davis*, Bd. Of Trs., 225 F.3d 1115, 1126 (9th Cir. 2000). An employee may meet this burden by directly showing that the employer was more likely motivated by discriminatory intent or by indirectly showing that the employer's explanation is

unworthy of credence. *Reeves*, 530 U.S. at 143; *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). "Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both specific and substantial." *Villiarimo*, 281 F.3d at 1062.

A. *Prima Facie Case of Discrimination*

Defendants assume, *arguendo*, that Sheridan can establish a prima facie case. For purposes of this Order, the Court finds Sheridan can establish a prima facie case of discrimination.

B. *Legitimate, Non-Discriminatory Reasons*

The burden of production, therefore, shifts to Defendants to articulate a legitimate, non-discriminatory reason for the challenged action. Defendants assert Sheridan was dismissed based on the considered judgment of three women: LaWall, Cramer, and Kellie Johnson, Chief Criminal Deputy. The reasons for Sheridan's dismissal, including dishonesty and Sheridan's conduct in the *Gray* case, were set forth in the Notice of Dismissal. (Notice of Intent to Dismiss, Doc. 63-1, Ex. 5). Indeed, Sheridan had committed an act of intentional prosecutorial misconduct as found by superior court judge Teresa Godoy. Further, Sheridan had a history of marginal performance as a prosecutor. In fact, LaWall stated during her deposition that multiple complaints from judges, justices of the peace, and defense attorneys had been made that questioned Sheridan's competency as an attorney. (*See* LaWall Depo. Doc. 63-1, Ex. 2, 109:12-17). The complaints included Sheridan's failure to apply the rules of evidence, Sheridan not knowing her way around the courtroom, and Sheridan's inability to clearly articulate a case. (*Id.*). LaWall also testified that, when Sheridan had been on probation, Sheridan's supervisor recommended Sheridan's employment be terminated based on Sheridan's incompetence. LaWall stated that she decided to retain Sheridan because she believed training could resolve the issues. LaWall stated:

> . . . Well, it turned out, it wasn't. Because the mistakes that you were making that both [the supervisor and another individual] wanted to terminate you for while you were on probation were the same kinds of mistakes that you continued to make for seven years.

(*Id*. at 110:11-15). The decision to dismiss Sheridan was reviewed on the merits by three different independent bodies (Pima County Merit Commission, Pima County Superior Court, Court of Appeals of Arizona).[4]

Sheridan argues Defendants have only presented weak evidence of a non-discriminatory reason for the dismissal. Indeed, she points out that Defendants are relying on historical performance issues for which, at the time they occurred, Defendants only took minimal action under the Pima County Merit System Rules for progressive discipline. Further, she asserts that, in the last 18 months of employment, Sheridan was the top producer in her unit in jury trial convictions. Sheridan also appears to be arguing that, because she had already been disciplined for her conduct in the *Gray* case (i.e., Sheridan had already received an informal Letter of Counseling), Defendants' reasons are weak.

Defendants have stated legitimate, non-discriminatory reasons for the dismissal of Sheridan. *See e.g. Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 661 (9th Cir. 2002) (an employee's poor job performance may constitute a legitimate, nondiscriminatory reason for terminating an employee). Substantial evidence supporting those reasons is included in the record before this Court.

---

[4]Sheridan argues that her appeal of her employment dismissal and the reviewing decisions are irrelevant, improper, and not material. For purposes of this Order, the Court disagrees. This evidence shows an independent review of the dismissal, corroborates the evidence presented before this Court, and places the evidence in context and/or provides additional details. *See e.g. Townsend v. Mabus*, 736 F. Supp. 2d 250, 252 (D.D.C. 2010) (aff'd sub nom. *Townsend v. Dep't of the Navy*, No. 10-5332, 2011 WL 3419567 (D.C. Cir. Mar. 23, 2011)) (evidence from merit board considered). While the other decisions are not entitled to preclusive effect, the Court does find the proceedings relevant. *C.f. United States v. Utah Constr. and Mining Co.,* 384 U.S. 394, 422 (1966) (in different context, "when an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").

C. *Whether the Stated Reasons are a Pretext for Discrimination*

A plaintiff claiming disparate treatment discrimination or retaliation must prove that the employer acted with a discriminatory motive: "That is, the plaintiff's [sex or protected activity] must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Reeves*, 530 U.S. at 141 (internal quotes omitted). In this case, there is no direct evidence that gives rise to an inference of discrimination. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) ("Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus"). Sheridan argues that the male attorneys Peasley and Zawada were clearly treated more favorably than she was. Not only had LaWall stated that she was prepared to support Peasley until he was disbarred even though he made mistakes, but Peasley and Zawada were moved into other positions within the PCAO and allowed to remain employed until the State Bar of Arizona initiated disciplinary proceedings against them. In contrast, Sheridan argues she had no disciplinary proceedings pending against her at the time she was dismissed from the PCAO. Sheridan argues this differing treatment establishes a genuine dispute of material fact regarding pretext. For example, Sheridan points out that she did not get the benefit of being placed in other positions within the office such as Zawada and Peasley and that LaWall's actions show favorable treatment for males.

As discussed by Sheridan, the amount of evidence required to demonstrate there is a genuine dispute of material fact regarding pretext is minimal. *Nicholson*, 580 F.3d at 1127. The Court considers whether a genuine factual question has been presented as to whether, "viewing the evidence in the light most favorable to [Sheridan], [Defendants'] reasons are pretextual." *Chuang v. Univ. of Cal. Davis, Bd. Of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000). An employee may meet this burden by directly showing that the employer was more likely motivated by discriminatory intent or by indirectly showing that the employer's explanation is unworthy of credence. *Reeves*, 530 U.S. at 143; *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). "Although a

- 11 -

plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both specific and substantial." *Villiarimo*, 281 F.3d at 1062.

Sheridan has not directly shown that Defendants were more likely motivated by discriminatory intent. Indeed, LaWall testified during her deposition that, even if Sheridan had been a male, Sheridan would have been terminated anyway. (LaWall Depo. Doc. 63-1, Ex. 2, 99:7-9; *see also* Affidavit of Barbara LaWall, Doc. 63–1, Ex. 4). Further, Sheridan has not shown that Defendants' explanation is unworthy of credence. In fact, Sheridan acknowledges LaWall used a "hire slow, fire fast" policy. (Response, Doc. 66, p. 11). This indicates that LaWall modified her standards while in her position.[5] This does not present any indirect showing that Defendants' explanation is not credible. Rather, Sheridan has not shown any "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions" in Defendants' proffered reasons, such that an issue of fact is raised as to whether Defendants reasons are a pretext for discrimination. *Brewer v. Quaker Oil Refining Corp.*, 72 F.3d 326, 331 (3rd Cir. 1995); *Miller v. Citizens Sec. Group, Inc*., 116 F.3d 343, 346, (8th Cir. 1997) (that employer only told employee once that his "job performance was unsatisfactory is not evidence that his job performance was satisfactory"). The Court finds Sheridan has not satisfied her burden of showing the legitimate reasons offered by Defendants were not their true reasons, but merely a pretext for discrimination; i.e., that "the employer's proffered explanation is unworthy of credence." *Reeves*, 530 U.S. at 143, (internal quotes omitted).

Defendants are entitled to judgment as a matter of law because the record conclusively reveals non-discriminatory reasons for Defendants' decision, Sheridan has not created any or, at most, only a weak issue of fact, as to whether Defendants' reasons are untrue, and there is "abundant and uncontroverted independent evidence that no

---

[5]Indeed, LaWall's deposition testimony implies that, over time, she has modified her standards, in making hiring and firing decisions. (*See e.g.*. LaWall Depo. 95:4-15). Sheridan was dismissed on June 27, 2014, approximately 11 ½ years after Peasley retired (December 2002) and approximately 10 years after Zawada resigned and retired (June 2004).

discrimination [] occurred." *Reeves*, 530 U.S. at 148. Sheridan has not presented specific and substantial evidence showing pretext. *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1096-97 (9th Cir. 2005); *see e.g. Rosenberg v. Mabus*, No. 2:14-CV-01507 JWS, 2017 WL 2793907, at *6 (D. Ariz. June 28, 2017) (discussing use of conclusory, self-serving statements to support disparate treatment claim). A mere showing that there was disparate treatment is not sufficient and Sheridan has not shown that the alleged disparate treatment was the result of intentional discrimination based upon her protected class characteristics. *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1314 (10th Cir. 1992). Indeed, the evidence establishing a prima facie case "is not enough now that [Defendants have] offered a nondiscriminatory explanation, and nothing in [Sheridan's] evidence controverts it." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 892 (9th Cir. 1994) (as amended on denial of reh'g (July 14, 1994)).

Summary judgment in favor of Defendants is appropriate.

Accordingly, IT IS ORDERED:

1. The Motion for Summary Judgment (Doc. 62) is GRANTED.

2. Summary Judgment is granted in favor of Defendants and against Sheridan.

3. The Clerk of Court shall enter judgment and shall then close its file in this matter.

Dated this 18th day of September, 2018.

Honorable Cindy K. Jorgenson
United States District Judge